# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:16-cv-431-RJC
# (3:08-cr-134-RJC-15)

| | |
|---|---|
| CESAR YOALDO CASTILLO, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) ORDER |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), in which he raises a claim pursuant to Johnson v. United States, 135 S.Ct. 2551 (2015). The Government has filed a Motion to Dismiss, (Doc. No. 12).

## I. BACKGROUND

Petitioner was one of 26 individuals charged in a 70-count Third Superseding Indictment relating to an MS-13 gang RICO conspiracy. See (3:08-cr-134, Doc. No. 623). The charges pertaining to Petitioner are: Count (1), conspiracy to commit racketeering; Count (26), accessory after the fact to murder (18 U.S.C. §§ 3, 2); Count (35) assault with a dangerous weapon in aid of racketeering activity and aiding abetting the same by "unlawfully and knowingly assault[ing] Victim No. 2 with a dangerous weapon, that being a firearm…" on or about February 3, 2008 "in violation of North Carolina law, Gen. Stat. § 14-32" (18 U.S.C. § 1959(a)(3) and 2); Count (36), use and carrying of a firearm during and in relation to a crime of violence (Count 35) on February 3, 2008 (18 U.S.C. § 924(c)); Count (37), assault with a dangerous weapon in aid of racketeering activity and aiding abetting the same by "unlawfully and knowingly assault[ing] Victim No. 3 with

1

a dangerous weapon, that being a firearm…" on February 3, 2008 "in violation of North Carolina law, N.C Gen. Stat. § 14-32" (18 U.S.C. §§ 1959(a)(3), 2); Count (38), use and carrying of a firearm during and in relation to a crime of violence (Count 37) on February 3, 2008 (18 U.S.C. § 924(c)); Count (39), assault with a dangerous weapon in aid of racketeering activity and aiding and abetting the same by "knowingly and unlawfully assault[ing] Victims No. 4, 5, and 6 with a dangerous weapon, that being a firearm," on February 16, 2008 "in violation of North Carolina law, N.C. Gen. Stat. § 14-32" (18 U.S.C. § 1959(a)(3) and 2); Count (40), using and carrying a firearm during and in relation to a crime of violence (Count 39) on February 16, 2008 (18 U.S.C. § 924(c)); Count (46), Hobbs Act robbery conspiracy (18 U.S.C. § 1951); and Count (47), attempted Hobbs Act robbery (18 U.S.C. § 1951 and 2). (3:08-cr-134, Doc. No. 623).

Petitioner pled guilty to Counts (1), (26),[1] (35), (36), (37), (39), and (40) and "admit[ted] to being in fact guilty as charged in those counts."[2] (Id., Doc. No. 759 at 1). As part of his guilty plea, Petitioner waived his direct appeal and post-conviction rights except for claims of prosecutorial misconduct and ineffective assistance of counsel. See (Id., Doc. No. 759 at 6). Petitioner agreed that, "should he file a motion to withdraw his guilty plea after it has been accepted …, such action will be considered a material breach of the terms of this plea agreement and, should the defendant be unsuccessful in his motion to withdraw his plea, the United States will be relieved of all its obligations under this plea agreement but defendant will not be allowed to withdraw from this plea agreement and will still be bound by its terms." (Id., Doc. No. 759 at 6). "[A]ny breach of the Plea Agreement … will allow the United States, at its sole discretion, to withdraw from its obligations under the Plea Agreement. in such event, the United States will be free to proceed on

---

[1] Count (26) was later dismissed on the Government's motion. (Id., Doc. Nos. 1243, 1276).

[2] The Rule 11 colloquy refers to a written Factual Basis that was signed by the parties and would be filed at a later date but no such document appears in the record. See (Id., Doc. No. 1551 at 13-14, 19, 21).

2

any properly-filed pending, superseding, or additional charges, including any charges dismissed pursuant to the Plea Agreement." (Id., Doc. No. 759 at 9).

The Presentence Investigation Report ("PSR") scored the combined adjusted offense level as 24 after applying the multiple-count adjustment. (Id., Doc. No. 1295 at ¶ 24). Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 21. (Id., Doc. No. 1295 at ¶¶ 98-99). No Chapter Four enhancement was applied. (Id., Doc. No. 1295 at ¶ 97). The PSR's criminal history section indicates that Petitioner was charged with "Assault with Deadly Weapon Intent to Kill, Inflict Serious Injury" for the February 16, 2008 vehicle chase and shooting in North Carolina Superior Court case number 08CRS215706, which was dismissed on August 7, 2008 because "[t]hese charges are part of the instant federal criminal case." (Id., Doc. No. 1295 at ¶ 116). Petitioner had a total of six criminal history points and a criminal history category of III. (Id., Doc. No. 1295 at ¶¶ 109-110). The resulting advisory guideline range was 46 to 57 months' imprisonment plus mandatory consecutive sentences of not less than 10 years for Count (36) and not less than 25 years for Count (40). (Id., Doc. No. 1295 at ¶¶ 133-34).

At the sentencing hearing, the parties stipulated to the existence of a factual basis to support the plea. (Id., Doc. No. 1560 at 3). Defense counsel agreed that the Court can rely on the offense conduct set forth in the PSR. (Id., Doc. No. 1560 at 3). The PSR describes the conduct underlying the VICAR and § 924(c) offenses as follows:

> On **February 3, 2008**, at approximately 1:21 am, Castillo … and other MS-13 members, brandished firearms and started firing into a crowd following an argument with security at the Gold Palacios Club (or Five Star) located at 6736 North Tryon Street, Charlotte. The argument ensued when a security guard for the club told the group they could not enter with an open beer bottle. At first security thought there was an English/Spanish language issue. So the owner of the club … came outside and also spoke with the group in Spanish. It became obvious at that point that the group understood the instructions of the security guard, but had chosen to ignore them. They said, **"We are Mara Salvatrucha, and we will kill all of you."** Witnesses indicate the MS-13 group began firing shots. **Castillo later**

3

> **admitted he had a handgun with him and that he fired several times as he was leaving the club. The owner of the club … and a patron … were both shot.** [The owner] was shot in the left calf; [the patron] was shot in the right foot. [The patron] … was standing near the entrance to the club when the shots began. Both victims required hospitalization and were treated for non-life threatening injuries…. (Counts 35, 36, 37, and 38).
>
> [O]n **February 16, 2008**, at the Mi Cabana Club in Charlotte, NC, Castillo … and other MS-13 members were present when rival gang members from the Malditos and Surenos pulled into the parking lot. Gang signs were flashed and a juvenile unindicted MS-13 member opened fire on the car containing the rival gang members, a bronze Chevrolet Lumina. The MS-13 members jumped into a nearby automobile, a burgundy sports utility vehicle, and began chasing the Chevrolet…. Castillo was in the back seat…. **Castillo later told investigators he fired shots from a crack in the car window, eventually emptying his weapon. Castillo's shots wounded one of the rival gang members….** Police reports indicate [the rival gang member] was shot in the lower left leg and was treated at the hospital. Two other occupants of the Chevrolet … were not injured…. (Counts 39 & 40).

(Id., Doc. No. 1295 at ¶¶ 51-52) (emphasis added).

Petitioner stated in open court that he had a chance to read the PSR, understood it, and had enough time to go over it with counsel. (Id., Doc. No. 1560 at 4). Petitioner told the Court he is "sorry … for everything [he has] done." (Id., Doc. No. 1560 at 25).

The Court found the existence of a factual basis to support entry of the plea and adopted the PSR without change. (Id., Doc. No. 1560 at 3). The Court sentenced Petitioner below the advisory guideline range to a total of 392 months' imprisonment comprised of two months for Counts (1), (35), (37), and (39), concurrent, 90 months, consecutive, for Count (36), and 300 months, consecutive, for Count (40). (Id., Doc. No. 1334); see (Id., Doc. No. 1335) (Statement of Reasons). Petitioner did not appeal.

Petitioner filed the instant § 2255 Motion to Vacate through counsel on June 21, 2016, asking that his § 924(c) convictions be vacated under Johnson. He argues that the predicate VICAR offense is not a "crime of violence" because § 924(c)'s residual clause is unconstitutionally vague and the force clause requires the use of violent force, which assault does not satisfy. He further

4

argues that the Court was without jurisdiction to convict or sentence him for Counts (36) and (40) because the Indictment fails to state an offense against the laws of the United States as required by 18 U.S.C. § 3231.

This case was stayed for several years during the pendency of Fourth Circuit cases <u>United States v. Ali</u>, No. 15-4433 and <u>United States v. Simms</u>, No. 15-4640 and United States Supreme Court case <u>United States v. Davis</u>, No. 18-431. <u>See</u> (Doc. Nos. 5, 8).

On October 4, 2019, the Government filed a Motion to Dismiss arguing that the § 2255 Motion to Vacate is waived, procedurally barred, and meritless. (Doc. No. 12). The Government argues that assault with a dangerous weapon in aid of racketeering under 18 U.S.C. § 1959(a)(3) is a valid § 924(c) predicate because the generic offense of assault with a dangerous weapon is a crime of violence. Even if the generic offense did not qualify, the § 1959 offenses still satisfy § 924(c)'s force clause because the underlying state statute, § 14-32(a) and (c), requires assault with a weapon "with intent to kill."

Petitioner filed a Response, (Doc. No. 15), arguing that his § 924(c) claim is meritorious based on <u>United States v. Mathis</u>, 932 F.3d 242 (4th Cir. 2019) and <u>United States v. Simmons</u>, 917 F.3d 312 (4th Cir. 2019), and that his claims are not waived or procedurally defaulted. Petitioner asserts that North Carolina General Statutes § 14-32, is not a § 924(c) predicate because the least culpable of the statute's three alternatives, § 14-32(b), is satisfied by culpable negligence and does not include an "intent to kill" element. Petitioner argues that his meritorious claim of actual innocence and his showing of cause and prejudice defeat the post-conviction waiver and procedural default and, alternatively, that the § 924(c) error is a jurisdictional defect that cannot be barred or waived.

The Government's Reply, (Doc. No. 17), reiterates the arguments that the § 924(c) challenge is waived, barred, and meritless and further argues that the Court has subject-matter jurisdiction over Petitioner's criminal case pursuant to 18 U.S.C. § 3231. Regardless of the Court's conclusion about the validity of Petitioner's argument that he is entitled to relief from his conviction because part of § 924(c) is unconstitutional, does not mean that the Court proceeded without jurisdiction.

## II. SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

**(1) <u>Waiver</u>**

An appellate waiver is generally enforceable where the waiver was knowingly and voluntarily made. United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992). The Fourth Circuit does not distinguish between the enforceability of a waiver of direct-appeal rights from a waiver

of collateral-attack rights in a plea agreement. See United States v. Lemaster, 403 F.3d 216, 200 (4th Cir. 2005). There are narrow exceptions to the enforceability of plea waivers such that "even a knowing and voluntary waiver of the right to appeal cannot bar the defendant from obtaining appellate review of certain claims." United States v. Johnson, 410 F.3d 137, 151 (4th Cir. 2005). For instance, because "a defendant who waives his right to appeal does not subject himself to being sentenced entirely at the whim of the district court[,] ... a defendant could not be said to have waived his right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." Marin, 961 F.2d at 496 (emphasis added).

Petitioner's knowing and voluntary guilty plea included an enforceable waiver of his post-conviction rights except for claims of ineffective assistance of counsel and prosecutorial misconduct and waived all non-jurisdictional defects. See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., Lemaster, 403 F.3d at 221 ("[A]llegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'"). No error occurred, such as sentencing beyond the statutory maximum, that would warrant setting aside the waiver. See Section (3), *infra*. Nor has Petitioner demonstrated that the Court exceeded its jurisdiction.

Petitioner's post-conviction challenges were waived by Petitioner's knowing and voluntary guilty plea and post-conviction waiver, and therefore, the instant § 2255 Motion to Vacate is subject to dismissal with prejudice.

**(2)      Procedural Default**

"Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." Bousley v. United States, 523 U.S. 614, 621 (1998) (internal citations omitted); United States v. Sanders, 247 F.3d 139, 144 (4th Cir. 2001). In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, a petitioner must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack. See United States v. Frady, 456 U.S. 152, 167-68 (1982); United States v. Mikalajunas, 186 F.3d 490, 492–93 (4th Cir. 1999); United States v. Maybeck, 23 F.3d 888, 891-92 (4th Cir. 1994).

A novel constitutional claim can operate as the equivalent of "cause" when: (1) the United States Supreme Court explicitly overrules one of its precedents; (2) a decision overturns a longstanding and widespread practice to which the Supreme Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved; and (3) a decision disapproves a practice that the Supreme Court arguably has sanctioned in prior cases. Reed v. Ross, 468 U.S. 1, 17 (1984); see Casper v. United States, 2016 WL 3583814 (W.D.N.C. July 1, 2016) (applying Reed to find "cause" to excuse procedural default of an unappealed Johnson claim). Actual prejudice is then shown by demonstrating that the error worked to petitioner's "actual and substantial disadvantage," rather than just creating a possibility of prejudice. See Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)). In order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a petitioner must show actual innocence by clear and convincing evidence. See Murray, 477 U.S. at 496.

Petitioner did not raise the instant claims on direct appeal. He has failed to demonstrate any exception to avoid the procedural default by showing cause and prejudice[3] or actual innocence. See Section (3), *infra*. Petitioner's claims are therefore procedurally defaulted from collateral review and are subject to dismissal with prejudice.

**(3)     Merits**

Even if Petitioner's claims were not waived and procedurally defaulted, they would fail on the merits. Petitioner contends that his § 924(c) convictions are invalid under Johnson v. United States, 135 S.Ct. 2551 (2015) and United States v. Davis, 139 S.Ct. 782 (2019).

In Johnson, the United States Supreme Court announced that the Armed Career Criminal Act's ("ACCA") residual clause[4] is void for vagueness, which is a retroactively applicable right. Id.; Welch v. United States, 136 S.Ct. 1257, 1265 (2016). The Supreme Court recently held that § 924(c)(3)(B)'s residual clause[5] is unconstitutionally vague under the principles set forth in Johnson. Davis, 139 S.Ct. at 782.

Whether an offense qualifies as a crime of violence under § 924(c)(3)(A)'s force clause requires application of the categorical approach or the modified categorical approach depending on the nature of the offense. See Davis, 139 S.Ct. at 2325-26. The categorical approach "focuses

---

[3] Assuming *arguendo* that novel case law provides "cause," Petitioner cannot demonstrate prejudice because his § 2255 claims are meritless for the reasons set forth in Section (3), *infra.*

[4] ACCA defines a "violent felony" as any felony that: "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another."* 18 U.S.C.A. § 924(e)(2)(B) (emphasis added). The italicized portion of the definition is referred to as the ACCA residual clause.

[5] Section 924(c) provides for enhanced sentencing for any person who uses or carries a firearm or possesses a firearm in furtherance of any crime of violence or drug trafficking crime. A "crime of violence" is defined under § 924(c)(3) as a felony that: "(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) *that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.*" 18 U.S.C. § 924 (emphasis added). The italicized portion of the definition is referred to as the § 924(c) residual clause.

9

on the *elements* of the prior offense rather than the *conduct* underlying the conviction." United States v. Mathis, 932 F.3d 242, 264 (4th Cir. 2019) (quoting United States v. Cabrera-Umanzor, 728 F.3d 347, 350 (4th Cir. 2013)). In a narrow range of cases involving statutes that are comprised of "multiple, alternative versions of the crime," the modified categorical approach is applied. Descamps v. United States, 570 U.S. 254, 261-62, 133 S.Ct. 2276 (2013) (citing Taylor v. United States, 495 U.S. 575, 602, 110 S.Ct. 2143 (1990)). When confronted with such a "divisible" statute, a court can rely on certain underlying documents to determine "what crime, with what element" formed the basis of the defendant's conviction. Shepard v. United States, 544 U.S. 13, 26, 125 S.Ct. 1254 (2005). Shepard-approved documents include the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information. This may include those portions of the PSR that "bear[] the earmarks of derivation from Shepard-approved sources…." United States v. Thompson, 421 F.3d 278, 285 (4th Cir. 2005) (holding that a PSR can be used in ACCA determinations where they bear the earmarks of derivation from approved sources, particularly where the defendant never objected to the propriety of the source material or its accuracy). However, portions of the PSR that recount the circumstances of prior offenses and do not bear the earmarks of Shepard-approved sources may not be relied on. See United States v. Boykin, 669 F.3d 467 (4th Cir. 2012) (it was plain error for the court to rely on the PSR to determine whether two prior convictions occurred on separate occasions for purpose of ACCA where nothing in the records showed that the recounting of the circumstances surrounding the two convictions set forth in the PSR came from Shepard-approved sources).

Petitioner's § 924(c) charges are based on VICAR violations that refer to North Carolina felonious assault with a deadly weapon, N.C. General Statutes § 14-32. The VICAR statute punishes certain violent acts committed by a defendant for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity. 18 U.S.C. 1959(a); United States v. Fiel, 35 F.3d 997, 1003 (4th Cir. 1994). Section 1959(a) is divisible by subsection and therefore the modified categorical approach applies. See United States v. McCollum, 885 F.3d 300, 305-07 (4th Cir. 2018) (implying that the VICAR statute is divisible); Manners v. United States, 947 F.3d 377 (6th Cir. 2020) (holding that the VICAR statute is divisible and concluding that § 1959(a)(3) is categorically a crime of violence for purposes of § 924(c)).

The North Carolina statute at issue addresses felonious assault with a deadly weapon with intent to kill or inflicting serious injury:

> (a) Any person who assaults another person with a deadly weapon with intent to kill and inflicts serious injury ["AWDWIKISI"] shall be punished as a Class C felon.
>
> (b) Any person who assaults another person with a deadly weapon and inflicts serious injury ["AWDWISI"] shall be punished as a Class E felon.
>
> (c) Any person who assaults another person with a deadly weapon with intent to kill ["AWDWIK"] shall be punished as a Class E felon.

N.C.G.S. § 14-32.

Subsections (a),[6] (b),[7] and (c)[8] each require a separate set of elements and therefore § 14-32 is divisible. See Mathis v. United States, 136 S.Ct. 2243, 2249 (2016) (a statute is divisible when it includes "alternative elements" defining distinct crimes, as opposed to "various factual means of committing a single element" upon which a jury need not unanimously agree). Cf. United States v. Vinson, 805 F.3d 120, 124-25 (4th Cir. 2015) (noting various forms of assault under North Carolina law but declining to consider divisibility); United States v. Mills, 917 F.3d 324, 329-30 (4th Cir. 2019) (expressing doubt regarding the trial court's conclusion that § 14-32(b) is a crime of violence under the sentencing guidelines after finding that subsection (b) is not *itself* divisible by *mens rea*, but declining to resolve the issue because any error was harmless).

As both the VICAR statute and § 14-32 are divisible, the Court may consider the relevant Shepard documents to determine whether the VICAR violations in this case satisfy § 924(c)'s force clause.

The Third Superseding Indictment, a Shepard-approved source, indicates that Petitioner pled guilty to § 1959(a)(3) by "unlawfully and **knowingly assault[ing]**" the victims. (3:08-cr-134, Doc. No. 623) (emphasis added).

The elements of § 1959(a)(3) are: (1) an assault; (2) with a dangerous weapon; (3) in furtherance of racketeering activity. Manners, 947 F.3d at 377. Common law assault is the "(1)

---

[6] See NC Pattern Jury Inst. - Crim. 208.10 (AWDWIKISI § 14-32(a) requires proof that: (1) defendant assaulted the victim intentionally; (2) the defendant used a deadly weapon; (3) the defendant had the specific intent to kill the victim; and (4) the defendant inflicted serious injury); State v. King, 468 S.E.2d 232, 343, N.C. 29 (1996) (same).

[7] See NC Pattern Jury Inst. - Crim. 208.15 (AWDWISI § 14-32(b) requires proof that: (1) the defendant assaulted the victim intentionally; (2) the defendant used a deadly weapon; and (3) the defendant inflicted serious injury upon the victim); State v. Anderson, 222 N.C.App. 138, 730 S.E.2d 262 (2012) (same).

[8] See NC Pattern Jury Inst. - Crim. 208.25 (AWDWIK § 14-32(c) requires proof that: (1) defendant assaulted the victim intentionally; (2) the defendant used a deadly weapon; and (3) the defendant had the specific intent to kill the victim); State v. Garris, 191 N.C.App. 276, 663 S.E.2d 340 (2008) (same).

willful attempt to inflict injury upon the person of another … or (2) a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm." Kinard v. United States, 2017 WL 4350983 at *5 (W.D.N.C. Sept. 29, 2017). Section 1959(a)(3) heightens simple assault by additionally requiring the use of a dangerous weapon, that is, an object with capacity to endanger life or inflict serious bodily harm. See United States v. Sturgis, 48 F.3d 784, 787 (4th Cir. 1995). By requiring both common-law assault and the use of a dangerous weapon, § 1959(a)(3) has as an element the use, attempted use, or threatened use of physical force against the person of another. See generally United States v. Bryant, 949 F.3d 168, 180 (4th Cir. 2020) (assault with intent to rob, steal, or purloin a postal employee by placing their life in jeopardy by using a dangerous weapon in violation of 18 U.S.C. § 2114(a) is categorically a crime of violence under § 924(c)'s force clause because the additional "life-in-jeopardy-with-a-dangerous-weapon element" transforms such an assault into a crime of violence); see, e.g., Cisneros v. United States, 2019 WL 6048044 (W.D.N.C. Nov. 14, 2019) (concluding that a violation of § 1959(a)(3) categorically qualifies as a crime of violence under § 924(c)'s force clause); Franklin v. United States, 2018 WL 3094888 (W.D.N.C. June 22, 2018) (concluding that a § 924(c) violation based on VICAR assault with a dangerous weapon in aid of racketeering and aiding and abetting is a violent felony under ACCA's force clause); United States v. Mills, 378 F.Supp.3d 563 (E.D. Mich. April 30, 2019) (assault with a dangerous weapon in aid of racketeering under VICAR is a crime of violence under § 924(c)'s force clause); United States v. Jones, 2017 WL 3725632 (W.D. Va. Aug. 29, 2017) (same); Cousins v. United States, 198 F.Supp.3d 621 (E.D. Va. 2016) (same).

Petitioner's guilty plea to violating § 1959(a)(3) through *knowing* assault satisfies the federal common law definition of assault and includes the additional element of doing so with a

dangerous weapon. See United States v. Nelson, 484 F.3d 257, 260 (4th Cir. 2007) (a knowing and voluntary guilty plea to a § 924(c) offense admits all the material elements of the crime, *i.e.*, that he possessed the firearm and did so in relation to the predicate offense). The § 1959(a)(3) offenses charged in Counts (35) and (39) thus categorically qualify as crimes of violence under § 924(c)'s force clause and Counts (36) and (40) are valid notwithstanding Johnson and Davis.

This outcome is not altered by the Indictment's reference to § 14-32. See, e.g., Mathis, 932 F.3d at 242 (examining Virginia first-degree murder and kidnapping to determine whether the VICAR offenses upon which they rely satisfy § 924(c)'s force clause). Cf. Moore v. United States, 2019 WL 5152777 (6th Cir. Feb. 6, 2019) (a § 924(c) count referred to a VICAR charge which, in turn, referred to a state assault statute, but the offense underlying the § 924(c) count was ultimately a violation § 1959 which is categorically a crime of violence under § 924(c)'s force clause). North Carolina law provides that an assault is an "intentional attempt, by violence, to do injury to the person of another." State v. Britt, 270 N.C. 416, 154 S.E.2d 519, 521 (1967). Subsections (a) and (c) include the element of "intent to kill" whereas subsection (b)'s intent element can be established through proof of culpable negligence. See State v. Jones, 353 N.C. 159, 538 S.E.2d 917, 923 (2000); Vinson, 805 F.3d at 126.

Although § 14-32(b) has a lower intent requirement than generic assault, the § 1959(a)(3) offenses in Counts (35) and (39) nevertheless qualify as crimes of violence. The Indictment's charge of "knowing" assault in violation of § 14-32 reveals the inclusion of an intent element beyond culpable negligence. This indicates that the § 14-32 violations necessarily refer to subsection (a) or (c), which require an intent to kill, rather than subsection (b), which requires only culpable negligence. See generally United States v. Bailey, 444 U.S. 394, 405, 100 S.Ct. 624 (1980) ("knowledge" corresponds loosely with the concept of general intent). The instant case is

14

therefore distinguishable from United States v. Simmons, 917 F.3d 312 (4th Cir. 2019), in which the Fourth Circuit found that North Carolina assault with a deadly weapon on a government official ("AWDWOGO") is not categorically a crime of violence under the sentencing guidelines. The AWDWOGO statute at issue in Simmons does not include any intent element and thus relies exclusively on assault under North Carolina common law that can be satisfied by culpable negligence. See N.C. Gen. Stat. § 14-34.2. The Court can determine that Petitioner's § 14-32 offenses were under subsections (a) or (c), which both contain the "intent to kill" element, and therefore Simmons does not dictate the result here. The Court can exclude § 14-32(b) as the offense underlying Petitioner's VICAR counts and therefore it need not resort to a "least culpable conduct" analysis as urged by the Petitioner.

Further support for this conclusion can be found in the PSR's criminal history section. It indicates that Petitioner was charged with "Assault with Deadly Weapon Intent to Kill, Inflict Serious Injury" for the February 16, 2008 incident underlying the VICAR offense in Count (39) and, in turn, the § 924(c) offense in Count (40).[9] (3:08-cr-134, Doc. No. 1295 at ¶ 116). This portion of the PSR bears the earmarks of reliance on Shepard-approved documents. It refers to the North Carolina case number, the relevant charge, and the disposition of the North Carolina case. Petitioner did not object to this portion of the PSR and does not allege that it is inaccurate. See Thompson, 421 F.3d at 285. The Court can therefore rely upon this portion of the PSR and can conclude, without referring to the underlying facts of the state offense, that the offense underlying Count (40) was AWDWIKISI under North Carolina General Statutes § 14-32(a). AWDWIKISI is "categorically a violent felony" under the force clause of ACCA because proof of a specific intent

---

[9] The PSR refers to paragraph 51 of the offense conduct section whereas the February 16, 2008 offense is actually contained in paragraph 52 of the final PSR. The February 16, 2008 offense appeared in paragraph 51 of the draft PSR. (3:08-cr-134, Doc. No. 1089 at ¶ 51).

15

to kill is an essential element of an AWDWIKISI conviction. See United States v. Townsend, 886 F.3d 441, 448 (4th Cir. 2018) (ACCA analysis). There is no reason to reach a different conclusion under the nearly identical force clause of § 924(c). Thus the VICAR offense charged in Count (39) is categorically a crime of violence and for this additional reason, Petitioner's challenge to Count (40) is meritless.

The Court therefore concludes that, even if Petitioner's claims were not procedurally defaulted and waived, they would fail on the merits.

### IV. CONCLUSION

For the foregoing reasons, the § 2255 Motion to Vacate is dismissed and denied and the Government's Motion to Dismiss is granted.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DISMISSED** with prejudice and **DENIED**.

2. The Government's Motion to Dismiss, (Doc. No. 12), is **GRANTED**.

3. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: March 24, 2020

*Robert J. Conrad, Jr.*
Robert J. Conrad, Jr.
United States District Judge